UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOYD ALLEN HARDRICK,
JR., *et al.*,

          Plaintiffs,               Case No. 2:15-cv-13884

                                      District Judge Nancy G. Edmunds

v.                             Magistrate Judge Anthony P. Patti

THE CITY OF DETROIT, *et al.*,

          Defendants

_____/

## REPORT AND RECOMMENDATION TO GRANT IN PART PLAINTIFFS' MOTION FOR ATTORNEY FEES (DE 91)

**I.**     **RECOMMENDATION**: The Court should grant in part Plaintiffs' motion for

attorney fees pursuant to Federal Rule of Civil Procedure 54(d)(2) and 42 U.S.C. § 1988

and require Defendants to pay $95,367.50 in attorney fees.

**II.**     **REPORT**

      **A.**     **Procedural Background**

      Plaintiffs are or, at all relevant times, were dog owners who reside in the City of

Detroit. (DE 13; DE 26 at 1.) They filed their complaint on November 4, 2015, pursuant

to 42 U.S.C. § 1983, seeking money damages for a violation of their rights under the

Fourth and Fourteenth Amendments (Count I) and seeking a permanent injunction to

suspend the enforcement of Detroit City Ordinance 04-04, §6-1-2, also known as "the

Animal Control Act" (Count II). They also brought claims of gross negligence and

intentional infliction of emotional distress (Counts III and IV).  These latter claims all center around the way their dogs were treated by Detroit Animal Control.  The original complaint was later amended to name additional Plaintiffs.  (DE 13.)  The Court summarized all of their claims in its summary judgment opinion and order, which is adopted by reference herein.  (DE 89.)

On December 18, 2015, Plaintiffs filed a motion seeking a preliminary injunction, which Defendants contested.  (DE 14 and 20.)  On February 22, 2016, the Court granted Plaintiffs' motion, enjoining Defendants from conducting searches pursuant to §6-1-2(e) of the Animal Control Act. (DE 26.)  The Court explained:

> There is no question that Section E authorizes the City and its agents to execute a search without a warrant or a legal excuse for not obtaining one.  In other words, it plainly "endorses procedures to authorize a search that clearly do not comport with the Fourth Amendment."  *Simon v. Cook*, 261 F. App'x 873, 883 (6th Cir. 2008) (quoting *Warshak v. United States*, 490 F. 3d 455, 477 (6th Cir. 2007) (*vacated on other grounds*, 532 F.3d 521 (6th Cir. 2008) (en banc)). For this reason, the Court finds that Plaintiffs' facial challenge to Section E has a strong likelihood of success on the merits.

(DE 26 at 9.)

The parties then filed cross motions for summary judgment.  On November 8, 2016, the Court granted in part both motions.  Specifically, the Court granted summary judgment to Defendants as to Plaintiffs' Fourth and Fourteenth Amendment damage claims, declined to exercise supplemental jurisdiction over Plaintiffs' state law claims for gross negligence and intentional infliction of emotional defense, and granted Plaintiffs'

2

motion to make the preliminary injunction permanent.  (DE 89 and 90.)  Plaintiffs have since filed an appeal to the Sixth Circuit, which remains pending.

### B.    The Instant Motion

Plaintiffs filed the instant motion on December 6, 2016, asserting that they are entitled to $98,158.00 in attorney fees from Defendants, "from the inception of the case until entry of the order granting the preliminary injunction."  (DE 91 at 16.)  Defendants oppose the motion, arguing preliminarily that Plaintiffs failed to comply with Eastern District of Michigan Local Rule 7.1 by not attempting to settle the attorney fee issue prior to filing the motion.  They further assert that Plaintiffs are not prevailing parties.  In the alternative, Defendants argue that Plaintiffs are attempting to collect attorney fees for matters unrelated to the issue on which they prevailed.   Limited oral argument was received by the Court at a combined hearing, status, and Rule 7.1 conference on June 19, 2017.

### C.  Standard of Review

Pursuant to Federal Rule of Civil Procedure 54, the Court may, upon motion by a party, award attorney fees.  Section 1988 of the Civil Rights Act authorizes an award of attorney fees to a party that has prevailed in litigation brought under § 1983.  Parties are considered prevailing where they "succeed on *any significant issue* in litigation which achieves *some of the benefit* the parties sought in bringing suit."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (internal quotations omitted) (emphasis added).  A prevailing

3

plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* Courts calculate the amount of fees to award by multiplying the number of hours reasonably expended on litigation and a reasonable hourly rate, subject to any adjustments. *Id.*

### D. Analysis

#### 1. Concurrence Pursuant to Local Rule 7.1(a)

Eastern District of Michigan Local Rule 7.1 requires the moving party to first "ascertain whether the contemplated motion . . . will be opposed," and, if so, to state in any motion that either there was a conference between the attorneys in which the "movant explained the nature of the motion or request and its legal basis" or that, despite reasonable efforts, "the movant was unable to conduct a conference." E.D. Mich. LR 7.1(a)(1)-(2). Defendants contend that the Court should not consider Plaintiffs' motion because they failed to seek concurrence in good faith. According to Defendants, Plaintiffs' emails related to concurrence did not provide sufficient information as to the nature and legal basis of the motion. Though not required by the local rule, Defendants assert that Plaintiffs should have provided the instant motion to them prior to filing because the motion was "almost certainly complete" during the email exchange. (DE 98 at 10.) Plaintiffs call Defendants' argument "disingenuous," because they have not demonstrated an intention to stipulate to the motion or otherwise discuss a compromise.

In addition, Plaintiffs argue, Defendants have engaged in the same behavior during the course of litigation.

Although the Court does take seriously the requirement that parties meet and confer to avoid unnecessary motion practice, in this instance Plaintiffs' actions should not bar its consideration of the instant motion. Defendants' citation to C*FE Racing Prod., Inc. v. BMF Wheels, Inc.*, No. 11-13744, 2013 WL 1845749 (E.D. Mich. Apr. 30, 2013) is instructive. There, the Court concluded that the moving party's efforts were insufficient pursuant to Rule 7.1 because, had they made an effort to meet and confer, "they could have avoided the need to file some or all of the motions." *Id.* at *2. Here, after protracted litigation, the parties engaged in a series of emails discussing Plaintiffs' request for attorney fees. In the emails, both parties indicate that concurrence could be possible. However, the fact that Defendants argue in their response that Plaintiffs are not prevailing parties and therefore are not entitled to any attorney fees convinces the Court that at least this issue—if not the issue of the *magnitude* of attorney fees—could not here have been avoided through a Rule 7.1 conference, the parties requiring a "thumbs up" or "thumbs down" ruling on this threshold question.

In an attempt to rectify any potential 7.1 issue, the Court invited the parties to discuss and narrow the issues following that June 19, 2017 status conference. That they were unable to do so was instructive—it is unlikely that a pre-filing conference would have come to a different result because the parties fundamentally disagree on several

aspects of the motion and require a ruling from the Court.  As such, I do not recommend

that the Court bar consideration of the instant motion based on Rule 7.1, despite the

possibility that the spirit of the rule was not followed.

### 2.    Plaintiffs are Prevailing Parties.

Here, as a threshold issue, the parties dispute whether Plaintiffs can be considered

prevailing parties entitled to an award of fees.  Defendants assert that Plaintiffs have not

prevailed because the Court ruled against them on their Fourth and Fourteenth

Amendment money damage claims, thereby finding that none of the Plaintiffs had

individually suffered a constitutional deprivation.  Plaintiffs argue, in turn, that they are

prevailing parties because the Court granted their motion for summary judgment in part,

awarded them a preliminary injunction, and entered a permanent injunction prohibiting

the city from enforcing § 6-1-2(e) of the Animal Control Ordinance.  (DE 89 at 29.)  The

Court stated the following with respect to the permanent injunction:

> As discussed, on February 22, 2016, this Court granted Plaintiffs'
> request for a preliminary injunction, prohibiting Defendants from
> relying on Section 6-1-2(e) of the Animal Control Act. Plaintiffs now
> move for a permanent injunction, arguing that the City has not
> appealed or amended the operative section of the ordinance, and there
> are no "factual issue[s] [left] to be resolved." (Plfs.' Mot. Summ. J.
> 33). The City, for its part, "does not object to making the preliminary
> injunction permanent." (Defs.' Resp. 24). In light of the Defendants'
> agreement, Plaintiffs' request to convert the preliminary injunction to
> a permanent injunction is GRANTED. Accordingly, for the reasons
> stated in the Court's February 22, 2016 Opinion and Order (Dkt. 26),
> the Court permanently enjoins Defendants from relying on or acting
> pursuant to Section 6-1-2(e).

Id.

Plaintiffs have prevailed on this narrow but significant issue. "[P]laintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461 U.S. at 433 (internal quotations omitted). Here, the Court ruled in favor of Plaintiffs in their motion for preliminary injunction. In that ruling, the Court "summarily disposed of" Defendants' challenge to Plaintiffs' standing, and determined that these Plaintiffs had standing to mount a facial challenge to the constitutionality of § 6-1-2(e) because they "sufficiently alleged actual injury flowing from Defendants' reliance on the Ordinance." (DE 26 at 5-6.)

Although the Court ultimately ruled in favor of Defendants on Plaintiffs' money damage claims and declined to assert jurisdiction over their state law claims, Plaintiffs have "obtain[ed] an enforceable judgment against the defendant from whom fees are sought." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). Specifically, they obtained the entry of the permanent injunction against the enforcement of § 6-1-2(e) of the Animal Control Act, the language of which had provided in relevant part as follows:

> The animal control officers of the Animal Control Division . . . shall have the right of entry, upon probable cause of a violation of this chapter, onto any premises, residence, or real property within the City for the purpose of capturing, collecting, or restraining any animal. Further, such officers shall have the right of entry, upon probable

7

> cause, to any premises, residence, or real property for the purpose of examining any animal suspected of having rabies, having been exposed to rabies, or having attacked or bitten a person or any animal.

While the Court did not ultimately conclude that any of the named Plaintiffs in this action had personally suffered a constitutional deprivation resulting in damages as a result of § 6-1-2(e), they prevailed in obtaining a permanent injunction against future reliance upon or enforcement of this provision, which was a significant issue in the litigation.

Further, Plaintiffs have achieved some degree of individual benefit with respect to their continued ownership of dogs and the future security of their homes. Obtaining a Court's declaration that a statute or local ordinance violates the Constitution and is therefore unenforceable is no minor achievement, particularly where the result of this relief will avoid unwarranted government intrusions onto one's private property in the future. *See, e.g. Payton v. N.Y.*, 445 U.S. 573, 585 (1980) (holding that the Fourth Amendment protects "the sanctity of a man's home and the privacies of life."); *United States v. Williams*, 354 F. 3d 497, 508 (6th Cir. 2003) (emphasizing that the "home is sacrosanct" for Fourth Amendment purposes). There is no question that "the public interest is promoted by the robust enforcement of constitutional rights." *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp. (SMART)*, 698 F.3d 885, 896 (6th Cir. 2012). Here, the benefit of this domestic security and of this enforcement of rights is shared by multiple named Plaintiffs and, indeed, the dog-owning Detroit community at large. As this Court previously and unambiguously stated, "the public

interest is served by an injunction here because it will protect the due process rights of all dog-owning Detroit residents."  (DE 26 at 12.)

Moreover, the fact that Defendants did not object to making the preliminary injunction permanent does not weaken Plaintiff's claim to fees.  *See Citizens Coal. for Block Grant Compliance, Inc. v. City of Euclid*, 717 F.2d 964, 966 (6th Cir. 1983) ("The fact that a party prevails through a favorable settlement rather than through litigation does not 'weaken' its claim to fees."); *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 603-604 (2001) (noting that a "prevailing party" is "one who has been awarded some relief by the court" including "settlement agreements enforced through a consent decree").  A party is considered to have prevailed where it has been the victor in a lawsuit or has "vindicated important rights through a consent judgment or without formally obtaining relief."  *Northcross v. Bd. of Ed. of Memphis City Sch.*, 611 F.2d 624, 633 (6th Cir. 1979) (holding modified on other grounds).  Here, Plaintiffs clearly "vindicated important rights."  *Id.*  In addition, Defendants did not stipulate to the entry of the preliminary injunction—the demarcation point of Plaintiff's fee claim—and after-the-fact merely "[did] not object to converting the earlier contested preliminary injunction into a permanent one."  (DE 89 at 29.)  The preliminary injunction would not have developed into a permanent injunction without Plaintiffs' original efforts in their previous motion, which was granted in full.

### 3.   Plaintiffs are entitled to recover reasonable attorney fees.

Because Plaintiffs are prevailing parties and no special circumstances would render such an award unjust, they should recover reasonable fees. *Smith v. Heath*, 691 F. 2d 220, 228 (6th Cir. 1982) (internal quotations omitted). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Where the plaintiff has "achieved only partial or limited success," the above calculation "may be an excessive amount" of fees. *Id.* at 436. "However, a court should not reduce attorney fees 'based on a simple ratio of successful claims to claims raised.'" *Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 548-49 (6th Cir. 2012) (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1169 (6th Cir. 1996)). Instead, where, as in the instant case, "a plaintiff's claims for relief involve a common core of facts or are based on related legal theories . . . the district court should focus on the significance of the overall relief obtained by the plaintiff." *Hensley*, 461 U.S. at 434. Put another way, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his [or her] attorney's fee reduced simply because the district court did not adopt each contention raised," but should "award only that amount of fees that is reasonable in relation to the results obtained." *Id.* at 440. A reasonable fee excludes hours that are "excessive, redundant, or otherwise unnecessary . . . ." *Id.* at 434.

Here, Plaintiffs seek fees incurred from the work performed by Attorneys Jennifer M. Grieco and Stephen T. McKenney from inception of the case until the entry of the order granting the preliminary injunction.  Specifically, they request $98,158.00, which represents 138.2 hours of work performed by Ms. Grieco at a rate of $395 per hour and 149.8 hours of work performed by Mr. McKenney at a rate of $295 per hour.[1]  Plaintiffs explain that, as of the filing of the instant motion, the total amount of fees incurred in the case is $330,669.00 for 937.70 hours of work by firm attorneys.  Thus, Plaintiffs seek an award of less than one-third of the total attorney fees incurred for the time expended in this case.

Plaintiffs attach to their motion a billing statement covering the period from October 20, 2015, when they began researching § 1983 claims, through February 22, 2017, when they read the opinion and order granting their preliminary injunction.  (DE 91-3.)  Defendants assert that the $98,158.00 fee is unreasonable, and make specific objections to the portions of the billing detail that itemize time spent: (1) with referring consultants; (2) soliciting additional Plaintiffs; (3) researching theories of recovery; and (4) conducting discovery and expert consults.  (DE 98 at 13-19.)  Defendants also argue that the rate charged by Ms. Grieco and Mr. McKenney is unreasonable.  At the June 19, 2017 hearing, Defendant indicated that a reasonable fee award in the instant case would

---

[1] The sum of Ms. Grieco and Mr. McKenny's rates multiplied by their hours is $98,700.  However, Plaintiffs' request in this motion is only for a total of $98,158. My calculations are based on the lower figure that was actually requested.

be $10,543.50, cutting off all attorney fees the moment the preliminary injunction was

handed down, with no compensable time conceded even for the attorneys to *read* the

Court's injunction opinion or, apparently, to conduct a Rule 7.1 conference prior to filing

the motion.  In short, Defendants would limit the scope of the award to no more than the

fees directly incurred in the actual preparation of the motion for preliminary injunction.

Applying the foregoing authority, therefore, the Court must first determine a

reasonable hourly rate.  Second, it must determine the number of hours reasonably

expended on the litigation.  Finally, the Court must reduce the amount of total fees, if

necessary, to achieve a reasonable fee representing the significance of the overall result

obtained by Plaintiffs.

### a.      Counsels' Proposed Rates are Reasonable

"Ordinarily, courts look to rates prevailing in the community for similar services

by lawyers of reasonably comparable skill, experience, and reputation."  *Hadix v.*

*Johnson*, 65 F.3d 532, 536 (6th Cir. 1995) (internal quotation omitted).  One way to

assess the prevailing rates in Michigan is to consult the State Bar of Michigan Law

Practice 2014 Survey ("the Survey"), which Plaintiffs attach to their motion.  (DE 91-5.)

*See Muslim Comty. Ass'n of Ann Arbor v. Pittsfield Twp.*, No. CV 12-10803, 2015 WL

5143983, at *2 (E.D. Mich. Aug. 28, 2015) ("Moreover, federal courts in Michigan

commonly consult the State Bar's annual Economics of Law Practice Survey to

determine the appropriateness of a proposed hourly rate.").  Preliminarily, with respect to

Ms. Grieco's reputation, as suggested by *Hadix*, the Court notes that she currently serves as the Vice-President of the State Bar Association Board of Commissioners (a/k/a the State Bar of Michigan or SBM), and will serve as President for the 2018-2019 term, presiding over all 45,000 attorneys in this state.[2] According to the Survey, attorneys with a similar profile to Ms. Grieco, an equity partner with over 19 years of experience, bill at rates between $225 and $417 per hour, putting her rate within the 25th to 75th percentile. (DE 91-5 at 7.)  Likewise, Mr. McKenney's rate also falls within the mean rate for lawyers in this geographic area with similar experience.

Defendants do not dispute that counsels' rates are supported by the Survey. Instead, they take issue with the use of the Survey itself, arguing that it is not a reliable marker.  However, as noted above, it is common for federal courts in this district to consult the Survey to determine the appropriateness of the proposed hourly rate.  *See Muslim Comty. Ass'n of Ann Arbor*, 2015 WL 5143983 at *2; *Lamar Advert. Co. v. Charter Twp. of Van Buren*, 178 F. App'x 498, 500 (6th Cir. 2006) (upholding the district court's determination of a reasonable hourly rate where it relied on the Survey); *Myers v. SSC Westland Operating Co., LLC*, No. 13-14459, 2015 WL 3915797, at *5 (E.D. Mich. June 25, 2015) (concluding that the attorneys' rate of $380 was reasonable based on the

---

[2] The Court takes judicial notice of the State Bar of Michigan directory and bylaws as set out in Article III, §11.  *See, e.g., Brooks v. Carlson*, No. 17-10398, 2017 WL 1091259, at *2 (E.D. Mich. Mar. 23, 2017).

professional standing and experience of the attorneys, as well as the fact that the Survey placed them in the 75th percentile); *Meyer v. Macomb Twp. of Macomb Cty., Mich.*, No. 06-14953, 2010 WL 891268, at *2 (E.D. Mich. Mar. 10, 2010) (using the Survey to determine the prevailing market rates in the relevant community and noting that federal courts rely on the Survey for this purpose); *Shaw v. AT&T Umbrella Benefit Plan No. 1*, No. 13-cv-11461, 2015 WL 8177654, at *5 (E.D. Mich. Dec. 8, 2015) (relying on the Survey to determine reasonable rates). Moreover, the Court relies on its own knowledge of the prevailing rates in the community, and finds Plaintiffs' proposed fee rates to be reasonable. *See, e.g., Miehle v. New York State Teamsters Conf. Pension & Ret. Fund*, 831 F. 2d 407, 409 (2d Cir. 1987); *Muslim Comty. Ass'n of Ann Arbor*, 2015 WL 5143983 at *2 (taking the "Court's knowledge of the local market" into account when assessing the reasonableness of the proposed fees); *see also Shaw*, 2015 WL 8177654 at *11-12 (awarding fees based on an hourly rate of $385 per hour for an experienced practitioner in Ann Arbor); *Munger v. First Nat'l Collection Bureau, Inc.*, No. 15-11276, 2016 WL 3964813, at *5 (E.D. Mich. July 25, 2016) (awarding fees of $525 per hour for very experienced attorneys in the State of Michigan where the case settled). As I have determined that Counsels' fee rates are reasonable, I will next address the categories of fees to which Defendants object.

### b.  Time Spent Consulting with Experts or Consultants

Plaintiffs are entitled to fees for consulting with experts.  Where experts do not ultimately testify in a case, courts have held that *expert witness fees* are not recoverable pursuant to §1988, but *attorney fees* for the time spent *consulting* with experts are recoverable.  As this district noted, an "attorney would likely be derelict in his [or her] duty if he [or she] did not at least consult an expert at some point during the case." *McCullough v. Cady*, 640 F. Supp. 1012, 1026 (E.D. Mich. 1986).

Here, Plaintiffs set forth approximately $3,000 in fees resulting from meeting with consultants, including those noted as "referring consultants," who presumably aided in searching out potential plaintiffs.  Defendants assert that the Court should not award attorney fees to Plaintiffs for time spent "drumming up Plaintiffs to add to this action, especially where those Plaintiff suffered no constitutional infringement."  (DE 98 at 15.) Although Plaintiffs are entitled to some amount of fees for consulting with experts, Defendants' point is well taken.  On the other hand, the services of a consultant could well have been necessary to determine, perhaps through a review of government records, which pet owners had standing to challenge the ordinance or suffered damages.  Given that the Court ultimately found that Plaintiffs did not themselves suffer damages resulting from a constitutional deprivation, I recommend that the Court exercise its discretion in

this area and reduce the total award of fees for time spent consulting with experts by half to $1,500.[3]

### c.       Time Spent Soliciting Plaintiffs

Similarly, Defendants assert that the Court should not allow payment of fees for time spent soliciting additional Plaintiffs in this action.  While Plaintiffs are entitled to fees for "minimal time spent" screening potential clients, Defendants' point is, again, well taken.  *See Kelly v. Corrigan*, 890 F. Supp. 2d 778, 786 (E.D. Mich. 2012).   In sum, the Court concluded that none of the Plaintiffs identified had suffered a constitutional deprivation, and thus Plaintiffs were only partially prevailing parties.  It would not be inappropriate, therefore, to reduce the total amount of fees to account for this.

Plaintiffs' billing statement sets out multiple calls with individuals who are not identified as current clients or are described as "potential" Plaintiffs from October 2015 throught February 2016.  Specifically, the calls occurred on October 27, 2015 (.7 hours at $276.50), October 28, 2015 (.8 hours at $316), October 29, 2015 (.9 hours at $355.50), November 2, 2015 (.8 hours at $316), November 3, 2015 (1 hour at $395), November 18, 2015 (.1 hours at $39.50), January 25, 2016 (.2 hours at $79), and February 4, 2016 (.3 hours at $118.50 and .1 hours at $39.50).  This totals 4.9 hours and $1,935.50.

---

[3] There is also a duplicate entry in this area, occurring on October 28, 2015.  The reduction described above also accounts for this double entry of $355.50 for a call with consultants.

16

Applying the foregoing authority and allowing an award for only minimal time spent soliciting new Plaintiffs, I recommend reducing Plaintiffs' fee award in this area by two-thirds, from $1,935.50 to $645.00, which would reduce the total amount of fees awarded by $1,290.50.

### d.   Time Spent Researching Potential Claims

Attorneys are entitled to recover fees expended for time spent researching the viability of potential legal claims. *Cox v. Shelby State Cmty. Coll.*, 194 F. App'x 267, 277–78 (6th Cir. 2006).  Defendants argue that Plaintiffs should not be awarded fees for time spent researching claims that were not included in the complaint.  However, as Plaintiffs point out,  the Sixth Circuit has explained that "[s]ection 1988 does not limit fee awards to work performed after the complaint is filed, but allows recovery of fees for time spent beforehand investigating the facts and researching the viability of potential legal claims." *Id.* at 278.  As such, Plaintiffs are entitled to recover fees for such research.

To the extent Defendants argue that the time Plaintiffs bill for research is unreasonable, that argument is unavailing.  Plaintiffs report about 75 hours of research (performed both before and after filing the complaint), for a total of about $24,000 in fees.[4]  While some of that time was spent researching claims that ultimately were not

---

[4] In addition to time spent on pure research, this estimate also includes the time counsel spent reviewing case law in preparation for the hearing on their motion for

included in the complaint, the vast majority was spent on issues related to § 1983 and the Fourth Amendment. Defendants take issue with Plaintiffs' research into RICO claims, including their discussions with consultants on those claims, but that represents only 2.6 hours in total.  None of the research reported on the bill strikes the undersigned as unreasonable, especially since it is reasonable to award time spent researching "the *viability* of *potential* legal claims" in the Sixth Circuit.  *Cox*, 194 F. App'x at 278 (emphasis added)  Accordingly, I do not recommend taking any amount off of Plaintiff's total in this area.

### e.    Reasonable Attorney Fees

Applying the foregoing authority, considering Plaintiffs' partial success, and subtracting the amounts outlined above, I conclude that a reasonable amount of attorney fees in this matter is $95,367.50.  As noted above, Plaintiffs have limited their request for attorney fees to only those incurred from the inception of the case to the granting of the motion for a preliminary injunction, in the amount of $98,158.  According to Plaintiffs' counsel, the amount of fees incurred up to the date of filing the instant motion, in contrast, is in excess of $330,000.  (DE 91 at 19.)

Defendants have recognized only $10,453.50 of those fees as reasonable—while reserving their right to object to my findings on the prevailing party issue and Plaintiffs' right to *any* fees—asserting that the fee requested by Plaintiffs is excessive considering it

---

preliminary injunction and, in some cases where it was not delineated, drafting the motion or replying to Defendants' brief.

18

merely covers the filing of a motion. However, this is not actually the case: Plaintiffs simply chose to limit their fee award to the *time period* from the beginning of the case to receiving the Court's opinion on their motion for preliminary injunction, and not simply to actual preparation of the motion. This is not a situation where Plaintiffs have provided their fee invoice for the entire case and the Court must reduce it to put it more in line with the issues on which they prevailed. Plaintiffs have essentially done this already.[5]

Moreover, a fee award of $95,367.50 is not out of line with other fee awards for parties who have obtained only a partial victory in civil rights litigation. *See, e.g., Hansen v. Ann Arbor Pub. Schools*, No. 02-cv-72802 (E.D. Mich. Sept. 29, 2004) (unpublished) (awarding plaintiffs attorney fees and costs in the amount of $87,601 plus costs of $15,1374 for prevailing on three of five issues); *Bench Billboard*, 499 F. App'x at 549 (affirming the district court's decision to reduce the requested fees by 25% to represent partial success and awarding fees in the amount of approximately $100,000); *Kentucky v. Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 421 (6th Cir. 2004) (affirming the district court's decision to reduce the lodestar amount by 35% and award fees of $121,319.64 for partial success).

The Plaintiffs in this case brought claims in three categories: (1) an equitable claim to strike down an unconstitutional ordinance; (2) a damage claim for violation of their

---

[5] Notably, Defendants assert that Plaintiffs are not even entitled to fees for time spent reading the opinion and order granting their preliminary injunction, a task which appears to the Undersigned to be eminently reasonable and indeed required by all counsel of record.

constitutional rights; and (3) common law tort claims. They prevailed on a third of these, "vindicated important rights," succeeded "on a significant issue," and "obtained an enforceable judgment." *Northcross*, 611 F. 2d at 633; *Hensley*, 461 U.S. at 433; and *Farrar*, 506 U.S. at 111. They sought significantly less than one-third of the overall attorney fees billed in the litigation by limiting their itemization to the period ending with the issuance of the preliminary injunction. I have reduced the figure even further by carefully scrutinizing the billings for the more limited time period for which fees are actually sought. In the context of the entire lawsuit and its ultimate outcome, fees in the 90 to 100 thousand dollar range appear to be reasonable; however, *even without reference to the total of all time and fees from start to finish*, the fee request in this motion is not far off the mark. In light of all this I recommend that the Court grant in part Plaintiffs' motion and order fees in the amount of $95,367.50.

## III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 7, 2017          s/Anthony P. Patti
                             Anthony P. Patti
                             UNITED STATES MAGISTRATE JUDGE

### Certificate of Service

I hereby certify that a copy of the foregoing document was sent to parties of record on July 07, 2017, electronically and/or by U.S. Mail.

                             s/Michael Williams
                             Case Manager for the
                             Honorable Anthony P. Patti

21