# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: November 22, 2017

Mr. James P. Allen Sr.
Mr. Neil B. Pioch
400 Monroe Street, Suite 620
Detroit, MI 48226

Ms. Jennifer M. Grieco
Mr. Stephen T. McKenney
Neuman Anderson Grieco McKenney
401 S. Old Woodward Avenue, Suite 460
Birmingham, MI 48009

    Re: Case Nos. 16-2704/17-2077, *Hardrick, et al v. City of Detroit,et al*
      Originating Case No. : 2:15-cv-13884

Dear Counsel,

 The court today announced its decision in the above-styled cases.

 Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

        Yours very truly,

        Deborah S. Hunt, Clerk


        Cathryn Lovely
        Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0268p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

FLOYD ALLEN HARDRICK, JR.; BIANCA PETERSON; THERESA ROBINSON; ROCHELLE MUNSON-GRIFFIN; FREDERICK DOUGLAS WEEMS; ROUSIA MAY; THOMASINA MCCONNELL; VERONICA SEWARD; CHRISTIE NELSON; ALICIA KATHLEEN NAPIER; STEPHEN SHACKELFORD; KENNETH D. SAVAGE; MYRTLE RICE; JOSEPH A. LINK, II,

  *Plaintiffs-Appellants* (16-2704),

  *Plaintiffs-Appellees* (17-2077),

 *v.*

CITY OF DETROIT, MICHIGAN; HARRY WARD,

  *Defendants-Appellees* (16-2704),

  *Defendants-Appellants* (17-2077).

Nos. 16-2704/17-2077

---

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-13884—Nancy G. Edmunds, District Judge.

Argued: October 5, 2017

Decided and Filed: November 22, 2017

Before: SUTTON, DONALD, and THAPAR, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Stephen T. McKenney, NEUMAN ANDERSON GRIECO & MCKENNEY, P.C., Birmingham, Michigan, for Appellants in 16-2704 and Appellees in 17-2077. James P. Allen, Sr., ALLEN BROTHERS, Detroit, Michigan, for Appellees in 16-2704 and Appellants in 17-2077. **ON BRIEF:** Stephen T. McKenney, Jennifer M. Grieco, NEUMAN ANDERSON GRIECO & MCKENNEY, P.C., Birmingham, Michigan, for Appellants in 16-2704 and Appellees in 17-2077. James P. Allen, Sr., ALLEN BROTHERS, Detroit, Michigan, for Appellees in 16-2704. Neil B. Pioch, ALLEN BROTHERS, Detroit, Michigan, for Apellants in 17-2077.

# OPINION

SUTTON, Circuit Judge. Dog bites dog. So begins this federal case about searches and seizures allegedly gone awry, if not the newspaper story about the dispute. Detroit has a stray-dog problem. As many as 50,000 of them roam the city's streets and abandoned homes, sometimes in packs. One group in a position to appreciate the seriousness of the problem, the United States Postal Service, ranked Detroit sixth in its "Annual Dog Attack City Rankings" in 2016.

The Detroit City Council sought to address the problem by enacting an ordinance that tightened the regulation of animals within City limits. The law imposed licensing and vaccination requirements on owners, sought to prevent the spread of rabies, and targeted "dangerous" or "vicious" animals. It also empowered law enforcement to enter the homes and yards of pet owners if probable cause existed that they (or their dogs) had violated the regulations. An assortment of dog seizures under the ordinance by officers of Detroit Animal Control, an agency of the City, prompted the dispute. Some of the seizures arose from dog attacks on other dogs, some from attacks on people, some from reports of dogs menacing the neighborhood, some from rabies concerns, some from neglected dogs, and some from unlicensed dogs.

In response to these seizures, fourteen individuals, the owners collectively of twenty-three dogs (18 Pit Bulls, 3 Presa Canarios, 1 German Shephard, 1 Boxer), filed this § 1983 action, making three essential claims against the City and the Director of Detroit Animal Control. The first: One part of the 2004 Detroit ordinance violated the Fourth Amendment by permitting officers to make warrantless searches of houses and yards to determine if the owners were complying with the City's dog-licensing rules and related regulations. The second: The City had a policy of unreasonably seizing dogs in violation of the Fourth Amendment. The third: The City had a policy of depriving owners of their pets without due process in violation of the Fourteenth Amendment. The individuals did not sue any of the individual officers who conducted the seizures.

Case 2:15-cv-13884-NGE-APP ECF No. 115 PageID.3699 Filed 11/22/17 Page 4 of 13
Case: 16-2704 Document: 37-2 Filed: 11/22/2017 Page: 3 (4 of 13)

Nos. 16-2704/17-2077          *Hardrick v. City of Detroit*                    Page 3

The district court granted the individuals the requested relief—an injunction—with respect to the warrantless search-and-seizure claim, and the defendants have not appealed that ruling. The district court granted the defendants judgment as a matter of law as to the other claims because the plaintiffs could not show any constitutional violations, and the individuals appealed both rulings. Because most of the plaintiffs cannot show that a Detroit policy or custom directly caused the alleged search-and-seizure violations, and because all of the plaintiffs cannot show a cognizable due-process violation, we affirm in large part and reverse in small part.

I.

In 2004, the Detroit City Council enacted an ordinance to address its stray-dog problem. Entitled "Animal Control, Regulation, and Care," the ordinance covers the "care, control, regulation, and disposition" of animals in Detroit. Detroit City Code § 6-1-2(a). The law allows animal control officers to capture and impound stray dogs and other animals owned in violation of the provisions and to euthanize them under some circumstances. *See id.* §§ 6-1-5(a), 6-1-6(d), 6-1-8(e), 6-2-1(c), 6-2-7(a), 6-3-8. It defines strays to include "any animal running loose" and makes it unlawful for anyone to refuse to surrender an animal that has attacked or bitten a person or other animal. *Id.* §§ 6-1-1, 6-1-6(e). It imposes dog licensing and vaccination duties on owners and increases oversight of the city's animal shelter. *See id.* §§ 6-1-7(a), 6-2-1(a), 6-3-1, 6-3-3. And it allows officers to enter "any . . . real property within the City for the purpose of capturing, collecting, or restraining any animal," whether they have a warrant or not. *Id.* § 6-1-2(e). A violation of the ordinance amounts to a misdemeanor and carries a maximum fine of $500 and up to 90 days in jail. *Id.* § 6-1-12(c).

For ten years, the ordinance apparently did not cause any problems. But in 2014 and 2015, officers of the Detroit Animal Control seized each of the plaintiff's dogs, prompting this dispute. The grounds for the seizures varied. The officers seized the dogs of five owners because the dogs were running loose off of the owners' property. They seized the dogs of seven owners because the dogs attacked a person or other animal. And they seized the dogs of two owners during an eviction.

Case 2:15-cv-13884-NGE-APP   Case: 16-2704   ECF No. 115, PageID.3700   Document: 37-2   Filed 11/22/17   Filed: 11/22/2017   Page 5 of 13   Page: 4 (5 of 13)

Nos. 16-2704/17-2077              *Hardrick v. City of Detroit*                              Page 4

The officers took the dogs to the City's animal shelter. They issued citations to some of the owners and told most of them that they could get their pets back after paying a fine. The length and circumstances of each dog's stay varied. The City held May's dogs for two days, but it held Link's dog for nine months. Four of the plaintiffs lost their dogs because they died during their stay at the shelter. Five plaintiffs lost their dogs when they returned home sick and died shortly after their stay. Five of the plaintiffs' dogs are still living.

The fourteen affected individuals filed this § 1983 lawsuit to enjoin enforcement of § 6-1-2(e) because it authorized warrantless searches and seizures of their property. They also sought damages from the City (though not the individual officers) for violations of their Fourth Amendment right to be free from unreasonable searches and seizures and their Fourteenth Amendment right to procedural due process. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Although the plaintiffs initially sued the City of Detroit, Detroit Police Department, Detroit Animal Control, and Animal Control Director Harry Ward, they later agreed to drop both agencies, leaving the City and Director Ward as the only defendants.

The district court enjoined § 6-1-2(e) as unconstitutional and awarded attorney's fees to plaintiffs' counsel as a result. It entered summary judgment against the plaintiffs with respect to their *Monell* damages claims because they could not show violations of the Fourth or Fourteenth Amendments.

The individuals appeal the dismissal of their *Monell* claims, and the City and Director Ward appeal the fee award. The City and Director Ward do not challenge the injunction.

II.

A few ground rules are in order. To prevail on their § 1983 *Monell* claims against the City and Director Ward under the Fourth and Fourteenth Amendments, the plaintiffs must show (1) that they suffered a constitutional violation and (2) that a municipal policy or custom directly caused the violation. *Monell*, 436 U.S. at 690–92. The question at the summary judgment phase of a case is whether the plaintiffs have produced sufficient evidence for a reasonable jury to find in their favor. We look at each question with fresh eyes and draw all reasonable inferences in the plaintiffs' favor. *Ward v. Polite*, 667 F.3d 727, 730 (6th Cir. 2012).

Case 2:15-cv-13884-NGE-APP     Case: 16-2704     Document: 37-2     ECF No. 115, PageID.3701     Filed: 11/22/2017     Filed 11/22/17     Page: 5     Page 6 of 13 (6 of 13)

Nos. 16-2704/17-2077                    *Hardrick v. City of Detroit*                                        Page 5

A.

*Did the plaintiffs forfeit their Fourth Amendment* Monell *challenge?* A threshold question is whether the plaintiffs have argued too little with respect to this claim. To prevail on their *Monell* claim, as just noted, they had to show *both* a constitutional violation and a municipal policy that directly caused the violation. The district court rejected this claim on the ground that no constitutional violations occurred. In their opening brief, the plaintiffs challenged only that ruling without arguing that a municipal policy caused any of the alleged violations. Generally speaking, that does not suffice. Appellate courts "review[] judgments, not opinions." *Texas v. Hopwood*, 518 U.S. 1033, 1034 (1996). A ruling by us that the plaintiffs have shown a constitutional violation, unaccompanied by a ruling with respect to any municipal policy, would not suffice to alter the judgment.

When the City and Director Ward raised this point in their appellee brief, the plaintiffs used their reply brief to respond—and to argue about several policies or customs that could have caused the violations. That usually is too little too late. And that usually is unfair to boot, as the delay deprives the appellee of a chance to offer a response in the normal sequence. Even so, we will consider the issue here, as the parties briefed the issue below and for the most part have had a chance to brief it here. Take note, however: That is a function of grace, not entitlement.

*What is the relevant policy?* Plaintiffs offer several policies or customs that could have caused the alleged violations. One potential policy is the set of guidelines that Director Ward issued for the department in addressing Detroit's stray-dog problem. But the plaintiffs do not show that any of the guidelines violate the Fourth Amendment, as opposed to, say, state law.

Another possibility, say the plaintiffs, is that we can infer an unconstitutional policy from Director Ward's recollection of just one dog-seizure warrant during his seven years as the Director. But why is that the appropriate inference? It seems just as fair to infer that no such policy existed given that many seizures stemmed from applications of the exigent-circumstances or plain-view exceptions to the warrant requirement or from dog owners who agreed to release their dogs to law enforcement rather than receive a ticket themselves. That a fact dispute may exist over whether some of the individual seizures were in truth justified by exceptions to the

Case 2:15-cv-13884-NGE-APP ECF No. 115 PageID.3702 Filed 11/22/17 Page 7 of 13
Case: 16-2704 Document: 37-2 Filed: 11/22/2017 Page: 6

Nos. 16-2704/17-2077         *Hardrick v. City of Detroit*         Page 6

warrant requirement shows only that plaintiffs might have brought § 1983 actions against the individual officers, not that Director Ward issued an unconstitutional policy. Any such track record does not establish a "widespread practice" in violation of the Constitution. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). Making matters more speculative, plaintiffs offer no comparisons: no comparison to the number of warrants issued before Director Ward took the helm and no comparison to the number of such warrants issued by comparable municipalities or for that matter any municipalities.

Even the allegation that Director Ward had a policy of encouraging officers to seize unlicensed dogs does not do the trick. If an officer has probable cause to believe that a dog is unlicensed, that is a reasonable ground for using the plain-view exception to the warrant requirement to seize them. That doesn't mean every seizure was constitutional. It just means that any such policy was not facially unconstitutional. At the same time, officers could implement such a policy not through warrantless entries onto the property but by putting dog owners to the choice (difficult though it might be) of releasing the dog or receiving a ticket themselves.

That leaves one other possibility to support the plaintiffs' *Monell* claim. The unconstitutional policy stemmed not from anything Director Ward did or did not do but from a section of the ordinance itself, specifically § 6-1-2(e) of the ordinance. That section, as noted, permitted officers to enter "any . . . real property within the City" without a warrant to investigate menacing or unlicensed dogs. By using the ordinance as the relevant policy, the plaintiffs can clear one hurdle for bringing a *Monell* claim: They have identified an unconstitutional policy. The City and Director Ward acknowledge as much. Having agreed (to their credit) that the ordinance is facially unconstitutional, they cannot deny that an unconstitutional policy exists.

*But did the policy directly cause the alleged illegal searches and seizures?* The plaintiffs also must connect each alleged constitutional violation to the policy by showing that the ordinance "directly caused the violation" of the plaintiffs' constitutional rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 484 (1986). All but two of the plaintiffs come up short in meeting this requirement.

Case 2:15-cv-13884-NGE-APP ECF No. 115 PageID.3703 Filed 11/22/17 Page 8 of 13
Case: 16-2704 Document: 37-2 Filed: 11/22/2017 Page: 7 (8 of 13)

Nos. 16-2704/17-2077            *Hardrick v. City of Detroit*            Page 7

For some plaintiffs, the policy had nothing to do with the seizures because the officers did not enter their property to seize the dogs. As to May, her dogs (Pretty Mama and Brick) were on *public* sidewalks, not private property, when the officers seized them. Section 6-1-2(e) thus had nothing to do with this seizure. The same is true for Munson-Griffin and McConnell. Officers seized their dogs only after they brought them to the animal shelter. R. 37 at 15 (Meijer); R. 55-15 at 2 (Bam).

For some plaintiffs, the officers seized their pets on real property, but the ordinance did not directly cause the seizures. The officers had ample grounds for entering Hardrick's home based on exigent circumstances: namely, an out-of-control, menacing pit bull (Mama), jumping in and out of a broken glass window of the house and in and out of the yard at will. *See Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). Once on Hardrick's property, the officers seized two other dogs—Puppy (Mama's puppy) and Rocky. The officers seized the other dogs because "[n]either Puppy nor Rocky [was] being properly cared for, and [P]uppy would likely starve without Mama to nurse it." R. 54-4 at 41. Concerns about the well-being of Puppy and Rocky justified the seizures. No one doubts that an officer could seize a (human) baby along with her mother if the officer properly seized the mother and no one else was at home. So too of Puppy, who would have been left in a vacant home without his Mama. Hardrick offers no evidence to rebut the officer's evidence that Rocky was not being cared for. Both seizures were justified by an exigency. Even if that were not the case, even if in other words the officers mistakenly sized up these exigencies, § 6-1-2(e) did not cause the seizures of Mama, Puppy, or Rocky, which is all that matters.

The same goes for Robinson and Weems. The officers entered their properties to execute a lawful eviction order and in the process seized their dogs—Diamond, Sparkles, and Scrappy— who no longer had any right to be there. It does not matter that the lawfulness of a seizure is distinct from the lawfulness of a search. *See Soldal v. Cook Cty.*, 506 U.S. 56, 63–65 (1992). Neither seizure, lawful or not, had anything to do with this provision of the ordinance.

Several plaintiffs agreed to turn over their dogs to the officers when confronted with allegations that their dogs had violated one provision or another of the City ordinance. Link gave the officers his dog (McLovin) when they invoked another provision of the ordinance—§ 6-

Case 2:15-cv-13884-NGE-APP ECF No. 115, PageID.3704 Filed 11/22/17 Page 9 of 13
Case: 16-2704    Document: 37-2    Filed: 11/22/2017    Page: 8    (9 of 13)

Nos. 16-2704/17-2077         *Hardrick v. City of Detroit*                    Page 8

1-6—which required a ten-day rabies quarantine for his dog. Faced with allegations that their dogs had violated the ordinance—by biting a person or running loose—Seward, Shackelford, and Peterson gave their dogs to the officers to avoid being ticketed themselves for violating the ordinance. *See* § 6-1-12; R. 37 at 23, R. 55-18 at 7 (Major); R. 55-22 at 5 (Kobe); R. 37 at 10 (Rocco). Because the officers did not simply enter the property and seize the dogs based on § 6-1-2(e), no Fourth Amendment "injury flow[ed]" directly from that provision. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 409 (1997).

Two of the plaintiffs' claims fail for lack of evidence. In the complaint, Nelson and Napier alleged that officers entered their property while they were absent and seized their dogs without their consent. R. 30 at 35 (Chunk); *id*. at 39 (four unnamed pit bulls). But both plaintiffs failed to appear for scheduled depositions and never provided affidavits to support these allegations. Absent any evidence to support the allegations in their complaint, Nelson and Napier's claims necessarily fail on summary judgment. *See* Fed. R. Civ. P. 56(c).

That leaves two plaintiffs who have shown a material factual dispute about whether this policy directly caused a Fourth Amendment violation. The first is Savage. He was absent from his home when the officers entered his yard and seized his three Presa Canarios: Isis, Heru, and Beautiful. Nothing in the record, and no evidence supplied by the defendants, contradicts Savage's record-supported claim that the officers entered his property based on any reason other than that § 6-1-2(e) allowed them to enter. That satisfies the direct-cause component of a *Monell* claim.

The record also supports the other requirement of a *Monell* claim for Savage—that the officer's entry into his back yard and seizure of the three four-legged pets violated his Fourth Amendment rights. There is not a lot of law about the Fourth Amendment and dogs. This much is clear, however. Even if friendship and ownership usually do not go hand in hand, "a dog is property." *Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 566 (6th Cir. 2016). And an officer's entry onto private property to seize a dog must obey the Fourth Amendment's strictures. *Id.* Absent a warrant or exception to the Fourth Amendment, the officers had no right to enter Savage's yard and seize his three dogs.

Case 2:15-cv-13884-NGE-APP ECF No. 115 PageID.3705 Filed 11/22/17 Page 10 of 13
Case: 16-2704 Document: 37 Filed: 05/22/2017 Page: 9 (10 of 13)

Nos. 16-2704/17-2077           *Hardrick v. City of Detroit*                     Page 9

But exigent circumstances, counter the officers, justified the search and seizure because a neighbor had reported that the three dogs had attacked another dog. That reality might justify a warrantless entry in some circumstances. *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001). But it could not do so here. The officers entered the yard and seized the dogs fifty-three days after the neighbor's complaint. If that is an emergency, the concept has little meaning. An allegation that a dog bit another dog on a previous occasion does not create an exigency now and forever. *See Welsh v. Wisconsin*, 466 U.S. 740, 753 (1984). The officers had plenty of time to get a warrant, and yet they did not. Savage has established a cognizable claim that the officers violated his Fourth Amendment rights and did so directly as a result of the City's unconstitutional ordinance.

A similar conclusion applies to Rice's dog: Charlotte. A material fact dispute also precludes summary judgment on this claim. The key problem for the government is that the evidence is unclear about where the officer seized Charlotte: on private property or on public property? Evidence cuts in both directions. Some of the evidence suggests that the officers might have seized Charlotte after she left the property. Other evidence, however, would permit the conclusion that the officer seized Charlotte on Rice's property. That material fact dispute precludes the city from disavowing reliance on the statute to make this seizure. As above, moreover, there is no Fourth Amendment exception that would have allowed them to enter the property without permission. A jury must resolve this claim.

B.

*Due Process.* On appeal, the individuals also claim a deprivation of property without due process in two ways: (1) a denial of process before the officers placed their pets in the city's animal shelter, which caused them to become sick and in some instances die, and (2) a denial of process after the seizures due to the lack of a citation that would have enabled them to contest the seizure or fines. These claims fail because the plaintiffs have failed to show an underlying violation, making it unnecessary to determine the existence of a valid or invalid municipal policy.

Case 2:15-cv-13884-NGE-APP ECF No. 115, PageID.3706 Filed 11/22/17 Page 11 of 13
Case: 16-2704 Document: 37-2 Filed: 11/22/2017 Page: 10 (11 of 13)

Nos. 16-2704/17-2077　　　　　　*Hardrick v. City of Detroit*　　　　　　Page 10

As to the first claim, the officers did not deprive them of property merely because, after the animals entered the pound, they became sick, died, or died after returning home due to alleged unsanitary conditions there. "[N]egligent conduct by a state official, even though causing injury," does not constitute a deprivation under the Due Process Clause. *Daniels v. Williams*, 474 U.S. 327, 331 (1986). That's all the plaintiffs argue here. They offer no evidence of a "*deliberate* decision" to destroy their pets. *Id.*

As to the second claim, the City has not yet denied the plaintiffs due process. Any constitutional violation "is not complete unless and until the State fails to provide due process." *Zinermon v. Burch*, 494 U.S. 113, 126 (1990). The plaintiffs need to show that Michigan offers no statutory or common law remedy. *Hudson v. Palmer*, 468 U.S. 517, 534–36 (1984). Yet they have not done so. Michigan tort law allows recovery for harm to animals. *See Oestrike v. Neifert*, 255 N.W. 226, 227 (Mich. 1934). And municipal officers are not immune for acts of gross negligence. *See* Mich. Comp. Laws § 691.1407(2).

III.

In their cross-appeal, the defendants argue that the district court improperly awarded attorney's fees because the plaintiffs did not "prevail[]" in full but obtained only some of what they sought. 42 U.S.C. § 1988(b). The district court granted the plaintiffs a permanent injunction, and the defendants have not appealed that decision. That kind of injunctive relief is the quintessence of "prevailing" status. *See Lefemine v. Wideman*, 568 U.S. 1, 2 (2012) (per curiam); *McQueary v. Conway*, 614 F.3d 591, 603 (6th Cir. 2010). The district court properly awarded attorney's fees.

In the alternative, the City and Director Ward raise a bevy of grounds for slashing the award's amount: Namely, the district court incorrectly included fees for the time plaintiffs' counsel spent consulting with experts, talking with potential clients, researching unsuccessful claims, and researching claims never brought. But these arguments, including a protest over two hours of legal research, overlook an admonition. In view of their ring-side seats of the proceedings, district courts exercise considerable "discretion in determining the amount of a fee award" to "avoid[] frequent appellate review of what essentially are factual matters." *Hensley v.*

*Eckerhart*, 461 U.S. 424, 437 (1983). Exactly the case here: The district court carefully considered the relief plaintiffs sought, compared it to the results obtained, and reduced the award accordingly. No abuse of discretion occurred.

For these reasons, we affirm the district court's rejection of the plaintiffs' Fourteenth Amendment claims. We affirm the district court's rejection of the Fourth Amendment claims filed by May, McConnell, Munson-Griffin, Hardrick, Robinson, Weems, Link, Napier, Nelson, Peterson, Seward, and Shackelford. And we reverse the district court's rejection of the Fourth Amendment claims filed by Rice and Savage. We separately affirm the district court's decision awarding attorney's fees to plaintiffs' counsel.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 16-2704/17-2077

FLOYD ALLEN HARDRICK, JR.; BIANCA PETERSON;
THERESA ROBINSON; ROCHELLE MUNSON-GRIFFIN;
FREDERICK DOUGLAS WEEMS; ROUSIA MAY;
THOMASINA MCCONNELL; VERONICA SEWARD;
CHRISTIE NELSON; ALICIA KATHLEEN NAPIER;
STEPHEN SHACKELFORD; KENNETH D. SAVAGE;
MYRTLE RICE; JOSEPH A. LINK, II,
    Plaintiffs - Appellants (16-2704),
    Plaintiffs - Appellees (17-2077),

    v.

CITY OF DETROIT, MICHIGAN; HARRY WARD,
    Defendants - Appellees (16-2704),
    Defendants - Appellants (17-2077).

```
FILED
Nov 22, 2017
DEBORAH S. HUNT, Clerk
```

Before: SUTTON, DONALD, and THAPAR, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's denial of all of the plaintiffs' Fourteenth Amendment claims and the Fourth Amendment claims filed by Rousia May, Thomasina McConnell, Rochelle Munson-Griffin, Floyd Allen Hardrick, Jr., Theresa Robinson, Frederick Douglas Weems, Joseph A. Link, Alicia Kathleen Napier, Christie Nelson, Bianca Peterson, Veronica Seward, and Stephen Shackelford is AFFIRMED. IT IS FURTHER ORDERED that district court's denial of the Fourth Amendment claims filed by Kenneth D. Savage and Myrtle Rice is REVERSED. The district court's decision awarding attorney's fees to plaintiffs' counsel is AFFIRMED.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk